[No. B076978. Second Dist., Div. One. Aug. 12, 1993.]

In re Finding of LIANG-HOUH SHIEH as a Vexatious Litigant.

COUNSEL

James L. Andion for Liang-Houh Shieh.

## OPINION

## SPENCER, P. J.—

### INTRODUCTION

On July 7, 1993, this court issued a written order to Liang-Houh Shieh (Shieh) to show cause before this court on July 28 why we should not declare him to be a vexatious litigant as defined by Code of Civil Procedure section 391, subdivision (b)(4), and issue a prefiling order pursuant to Code of Civil Procedure section 391.7, subdivision (a), prohibiting him from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. (*In re Whitaker* (1992) 6 Cal.App.4th 54, 55 [8 Cal.Rptr.2d 249], review den. July 22, 1992; *In re Luckett* (1991) 232 Cal.App.3d 107, 108 [283 Cal.Rptr. 312], review den. Sept. 25, 1991.) At the request of Shieh's counsel, the matter was advanced to July 27.

### BACKGROUND

Over the past two years, Shieh has filed innumerable complaints in the federal and state courts, many of which are duplicative and most of which are based on substantially similar facts. These various suits have resulted in

at least 19 writ petitions to this court and 1 to the Fourth District, some of which are duplicative and all of which have been denied. He and his counsel have been sanctioned separately three times for pursuing frivolous writ petitions.

In addition to the two duplicative appeals which prompted this proceeding (*Fulbright & Jaworski* v. *Shieh* (June 19, 1992) B068256 [nonpub. opn.], (Apr. 26, 1993) B075640 [nonpub. opn.]), which we recently dismissed largely for lack of jurisdiction and partly due to Shieh's failure to pay the sanctions imposed by the trial court or to post a bond to stay the order, Shieh has filed at least 14 appeals in 9 separate matters. In *Shieh* v. *Christopher* (May 1, 1993) B075017 (nonpub. opn.), the appeal was dismissed on June 17, 1993, for lack of jurisdiction. In *Shieh* v. *Thompson* (Feb. 1, 1993) B064714 (nonpub. opn.), review denied May 19, 1993, and *Shieh* v. *Newman* (Sept. 16, 1992) B059327 (nonpub. opn.), review denied December 30, 1992, the orders of dismissal were affirmed. In *Say & Say* v. *Castellano* (Apr. 28, 1993) B075267 (nonpub. opn.), the appeal was dismissed for lack of jurisdiction on June 24, 1993. In *Shieh* v. *Christopher* (May 28 and June 3, 1993) B076400 (nonpub. opn.), a motion to dismiss for lack of jurisdiction was filed on June 25 and Shieh was given until August 3, 1993, to respond. Of the remaining appeals, two are scheduled for oral argument on July 29, 1993, three are not yet or just have been fully briefed and four are not yet docketed. In short, Shieh has yet to prevail in this court or in the lower courts.

In the matter which prompted this proceeding, Fulbright & Jaworski's complaint alleges in pertinent part that shortly after Shieh joined the firm as a partner, the firm became aware that Shieh had filed and still had pending "a facially offensive and inappropriate complaint in Los Angeles County Superior Court against a long-standing and well-regarded law firm, Graham & James. Shieh had concealed this fact from Fulbright by, among other things, suing Graham & James under a pseudonym. This fact, together with other inappropriate conduct of Shieh [delineated elsewhere in the complaint], caused Fulbright to reconsider Shieh's partnership in the firm."

Accordingly, on March 1, 1991, Fulbright & Jaworski partners Harry Hathaway (Hathaway) and David Ebershoff (Ebershoff) discussed with Shieh conditions which the firm desired to attach to his partnership. Hathaway and Ebershoff asked Shieh to agree to these conditions and sign a memorandum of understanding to that effect. Although Shieh had agreed to the conditions, and further agreed that the terms of the memorandum accurately reflected the parties' agreement, he refused to sign the memorandum of understanding. Instead, he asked that his agreement be set forth in a

confirming letter. A confirming letter dated March 19, 1991, from Hathaway to Shieh set forth the parties' agreement to be bound by the terms of the memorandum of understanding. Despite his agreement to do so, Shieh never dismissed the lawsuit against Graham & James. He also continued much of his other inappropriate conduct.

"On March 29, 1991, Shieh met with Hathaway and Ebershoff to discuss his future at Fulbright. At that meeting, Hathaway and Ebershoff told Shieh that, because of the conduct described above, the firm had decided to terminate his partnership. Shieh denied he was bound by the terms of the Memorandum of Understanding and he demanded a full partnership vote on the issue of his termination. A partnership vote was later taken and Shieh was expelled from [the firm], effective March 31, 1991."

After Shieh's partnership was terminated, he attempted on several occasions to have firm employees with whom he had worked closely remove firm files and bring them to his home. He contacted all or most of the clients with whom he had been in communication during his brief partnership with the firm and "instructed them to sign a letter purporting, among other things, to give Shieh's attorney the right to all their files and their trust account funds and he instructed them not to communicate at any time with anyone acting on behalf of Fulbright." Additionally, Shieh instructed these clients to not pay invoices Fulbright & Jaworski sent to them without Shieh's prior consent. In some cases, he "purported to 'release' them from any obligation to Fulbright. . . . Shieh told some of these clients that Fulbright was unethical and unprofessional and had misrepresented to Shieh the firm's financial condition and the terms of its partnership opportunities."

A controversy arose over which client files should be transmitted to Shieh. On approximately May 17, 1991, Shieh's then-attorney, Francisca Araiza, delivered to Fulbright & Jaworski "approximately 20 copies of purported file transfer letters. These form letters were not directed from the clients to Fulbright, but purported instead to be from clients to Shieh's attorney, Araiza, among others. The form letters were not on the letterhead of clients. Replete with other defects, and absent independent confirmation of client desires, the letters were an insufficient basis on which to transfer files."

Both Shieh and his attorney "refused to accept Fulbright's assistance in preparing an appropriate file transfer letter, and claimed to 'prohibit' Fulbright from contacting any of the clients. As a result, Fulbright sent letters to each of the clients on whose behalf the form transfer letters were received attempting to confirm they wanted their files transferred. Almost without exception, clients did not respond to these efforts to confirm their wishes.

Unbeknownst to anyone at Fulbright, . . . Shieh had contacted [these clients] and instructed them not to communicate with Fulbright at any time or respond to Fulbright's letters."

Having instructed clients not to respond, Shieh "used Fulbright's inability to obtain direct client authorization for the transfer of their files to institute a campaign of harassing and baseless litigation in cases against Fulbright, some of its partners and Fulbright's lawyers. Shieh filed one action, entitled *Shieh* v. *Ebershoff, et al,* Case No. BC0270441, in Los Angeles County Superior Court," in which he unsuccessfully sought an injunction prohibiting Fulbright & Jaworski from communicating with clients. "This case was brought by Shieh maliciously and without probable cause and for the purpose of harassing Fulbright. After a series of demurrers to the various versions of his complaints were sustained, Shieh dismissed the case while another demurrer was pending."

Among other cases Shieh filed in the Superior Court of Los Angeles County is PSJ et al. v. Hathaway et al., No. BC033849, in which Shieh and another attorney "counseled the commencement of litigation by other clients, . . . PSJ Corporation and Perry Chien, regarding the delivery of its files to Shieh. PSJ was represented in this litigation by Shieh and Hollingsworth." They did so notwithstanding all parties' knowledge that Fulbright & Jaworski had expressed a desire to deliver the files, requiring only a letter from PSJ and Chien asking that their files be transferred, and, therefore, Fulbright & Jaworski was not withholding the files wrongfully. Shieh "directed the filing and prosecution of this litigation in bad faith and without probable cause, and even though Shieh had instructed PSJ and Chien to ignore Fulbright's inquires about the clients' desires." The action "was filed, served and prosecuted [solely] for the purposes of harassing Fulbright and obtaining improper leverage in the *Shieh* Action." On the eve of the depositions of PSJ and Chien, at which they "would be asked to explain their refusal to provide Fulbright with clear instructions," PSJ and Chien dismissed the action.

"In an effort to interfere with Fulbright's relationship with and harass clients," Shieh served subpoenas on clients "with whom Shieh had had no previous contact at any time, . . . seeking ten years worth of billing and financial records. . . . In an effort to embarrass Fulbright, Shieh repeatedly filed . . . confidential financial documents irrelevant to the litigation which he knew Fulbright desired to keep private."

After dismissing the first Ebershoff action, Shieh filed Shieh v. Ebershoff[1] (Super. Ct. L. A. County, 1992, No. BC061170), acting in propria persona as cocounsel, a 180-page complaint purporting to state causes of action for Racketeer Influenced and Corrupt Organizations Act (RICO) violations, breach of contract, breach of the covenant of good faith and fair dealing, seeking an accounting, defamation, fraud, seeking injunctive relief, discrimination in violation of 42 United States Code section 1981, conspiracy to discriminate, discrimination in violation of Civil Code section 52.1, intentional interference with economic relations, conversion, intentional infliction of emotional distress, declaratory relief, quantum meruit, nonpayment of wages, seeking penalties pursuant to Labor Code section 203, wrongful termination in violation of public policy, inducing a breach of professional duty, unfair competition and violation of the Uniform Trade Secrets Act. Shieh alleged he then was a partner in Fulbright & Jaworski who specialized in Chinese law and related international law. He alleged the defendants (several law firms and all the partners therein, as well as some individual practitioners) had engaged in a conspiracy to take Shieh's clients away from him and drive him out of business. The smaller conspiracies encompassed within these grander conspiracies included one in which Fulbright & Jaworski and its partners were the primary actors.

From April 1989 to January 6, 1991, Shieh had been a partner in Lewis, D'Amato, Brisbois & Bisgaard. From September through December 1990, Shieh had several meetings with a number of the partners of Fulbright & Jaworski to discuss the possibility of Shieh becoming a partner in that firm. Shieh described problems he had encountered with other attorneys interfering with his client relationships while he was employed by Graham & James. These attorneys had attempted to take his clients as their own. Additionally, Shieh pointed out that his Chinese clients had ways of thinking and methods of doing business which differed from those of American clients. He requested that he be informed and give his consent before anyone at Fulbright & Jaworski contacted his clients. Hathaway agreed; he assured Shieh that no one at Fulbright & Jaworski was interested in taking away Shieh's clients. Hathaway and Ebershoff promised "they would assign litigation and transactional attorneys to work under Shieh's direction as a separate Chinese practice group."

On approximately December 20, 1990, Hathaway and Shieh agreed Shieh would receive at least $200,000 in annual compensation under the guaranteed partner payment program of Fulbright & Jaworski. Shieh was to be

---

[1]Shieh had filed a federal action entitled Shieh v. Ebershoff (U. S. Dist. Ct., C.D.Cal., 1991, No. CV91-5446WJR). Apparently, the action was dismissed sometime prior to January 12, 1993, the date on which the court ordered the inclusion of attorney fees of $125,421.49 in favor of the Graham & James defendants and $37,236.67 in favor of the Fulbright & Jaworski defendants included in the costs.

assigned 365 partnership units, which Hathaway represented were the equivalent of approximately $200,000 per year; this was confirmed in writing. Accordingly, Shieh accepted the offer to become a partner in Fulbright & Jaworski. In part, the contract under which Shieh became a partner required that no member or agent of the firm interfere with Shieh's relationship with his clients even if he ceased to be a partner. It further required that the firm release to Shieh all documents, discs, tapes and files pertaining to Shieh's clients. Additionally, Fulbright & Jaworski was obligated to act in good faith in using discretion to determine what would justify expelling a partner.

Shieh performed all acts required of him in the performance of his contract of partnership, beginning work under the contract on January 7, 1991. However, on January 8, 1991, Hathaway and Ebershoff showed Shieh a copy of a suit which Shieh had filed against Graham & James but had not yet served. They threatened Shieh that he could not continue as a Fulbright & Jaworski partner unless he immediately dismissed the action with prejudice. The complaint against Graham & James alleged discrimination and retaliation against Shieh because of his race, national origin, religious beliefs, ancestry and age. Hathaway told Shieh the suit must be dropped because Hathaway was seeking office in certain bar associations and Fulbright & Jaworski's Los Angeles office might merge with another law firm in the future. Consequently, Hathaway did not wish to anger influential law firms. It is Shieh's belief that the firm did not require any other partner to dismiss a personal lawsuit in order to avoid termination as a partner.

On approximately January 9, 1991, Hathaway and Ebershoff imposed as a condition of the continuation of Shieh's partnership in the firm the immediate dismissal with prejudice of the Graham & James suit. Additionally, once the suit was dismissed, Shieh's partnership status would be reviewed after an unspecified period; if Shieh did not meet unspecified requirements, he would be expelled from the partnership. On January 11, 1991, Hathaway and Ebershoff informed Shieh his partnership position would be reviewed on July 31, 1991. It was certain Shieh would continue as a partner, but only if he immediately dismissed the Graham & James suit. The imposition of such a condition was outside the scope of the contract of partnership. Although Hathaway and Ebershoff confirmed that Shieh could take his clients with him if he left, they and Miller stated they would not permit certain of his clients to follow him from Lewis, D'Amato, Brisbois & Bisgaard to Fulbright & Jaworski unless those clients first paid many thousands of dollars in disputed billings. "This angered these clients and disrupted Shieh's relationship with them."

On approximately February 11, 1991, Ebershoff presented Shieh with the memorandum of understanding, stating Shieh must sign it if he was to

remain a partner. Shieh had never before heard of or seen the memorandum, which was dated January 7. The memorandum did not reflect any agreement between Shieh and Fulbright & Jaworski; he did not sign it. It is his belief that the firm has never required any other partner to sign a similar agreement. As of approximately February 7, 1991, the firm began paying Shieh only 60 percent of his agreed-upon compensation. It is his belief no other partner was removed from the guaranteed partner compensation program without the partner's prior consent.

On March 29, 1991, Hathaway delivered to Shieh a letter purporting to terminate Shieh's status as a partner, effective March 31. He did so without first obtaining a full partnership vote as required by Shieh's contract of partnership. It is Shieh's belief that the firm has never attempted to terminate any other partner's interest in this fashion, and the action was undertaken due to Shieh's refusal to dismiss the Graham & James action or to sign the memorandum of understanding and Hathaway's reluctance to have the firm involved in Shieh's Chinese law practice. At the same time, Shieh delivered a memorandum to Hathaway and Ebershoff in which he stated he had not agreed to the provisions of the memorandum of understanding.

In May 1991, Shieh obtained authorizations from most of his clients by which he could require Fulbright & Jaworski to surrender these clients' files. An agent of Shieh presented these authorizations to an agent of Fulbright & Jaworski on May 15 and requested the files. After some discussion, Shieh's agent was told to return later that day to pick up the files. When the agent returned, she was told the firm refused to release the files. She was again refused the files on the following day. With the exception of a few files, the firm has not yet honored the client authorizations.

Since March 29, 1991, Shieh has not authorized any member or agent of the firm to communicate with any of his clients. Instead, he specifically prohibited such communication. Nonetheless, the firm has contacted Shieh's clients repeatedly. In May, June, July, August and September of 1991, Fulbright & Jaworski sent letters to many of Shieh's clients concerning the transfer of their files to Shieh. A letter of August 12 is misleading; it states Francisca Araiza has refused to accept the client files, but does not mention that she did so because she no longer was acting as Shieh's attorney. The letters fail to inform the clients that the firm had refused to release the files to another agent of Shieh. Additionally, the firm sent disputed bills to some of Shieh's clients, misrepresenting that the bills were sent by Shieh as the "requesting attorney."

On February 18, 1993, the superior court declared Shieh to be a vexatious litigant pursuant to Code of Civil Procedure section 391, subdivision (b)(2),

(3) and (4), and ordered that security be posted in the sum of $150,000. The court stayed the action, "except for reconsideration of this order," until 10 days after the security was posted.[2]

It is clear this massive complaint in Shieh v. Ebershoff is simply Shieh's version of the same events recounted in Fulbright & Jaworski's complaint in the instant matter. The allegations made against the remaining defendants are substantially similar in character and content. On March 30, 1993, Shieh filed what is, minus the allegations of RICO violations and civil rights violations, essentially an identical complaint in Say & Say[3] v. Miller (Super. Ct. Orange County, 1993, No. 707971, dismissed July 7, 1993). Shieh has filed similar complaints based on substantially similar facts in Shieh v. Christopher (Super. Ct. Los Angeles County, 1992, No. BC054981); Say & Say v. Castellano (Super. Ct. L. A. County, 1992, No. BC059833); Say & Say v. David (Super. Ct. Orange County, 1993, No. 706439); Say & Say v. Lindquist (Super. Ct. Orange County, 1993, No. 706438) and Say & Say v. Layman (U.S. Dist. Ct., C.D.Cal., 1991, No. CV91-6690JGD). In the Christopher, Castellano and Layman cases, as in the Ebershoff case, Shieh acted in propria persona as cocounsel.

In Shieh v. Christopher, *supra*, Shieh purported to state causes of action for unfair competition, violation of Labor Code section 1050 et seq., defamation, invasion of privacy, interference with prospective economic advantage, legal malpractice, breach of fiduciary duty, conversion, breach of contract and inducing breach of contract. In the early and mid-1980's, Shieh worked for O'Melveny & Myers and Gibson, Dunn & Crutcher, assisting the efforts of those firms to establish, maintain and expand a practice in the Pacific Rim. "The initiation, course, termination, and aftermath of those associations are the subject of two prior civil actions brought by Plaintiff: *A. Shieh* v. *Michael Newman, et al.*, LASC case No. NEC53509 (Appeal pending: 2nd Civil No. B059327) .'. . and *L.C. Shieh, et al.* v. *David I*

---

[2]Notices of appeal were filed in the Ebershoff case on April 2, 1993 (B074985) and June 3, June 30, July 1 and July 2, 1993 (B076762). The appeal in B074985 has no effect on the vexatious litigant order, for Shieh appeals only from the court's order sustaining the demurrer of Lewis, D'Amato, Brisbois & Bisgaard without leave to amend and imposing sanctions on January 29, 1993, and the March 26, 1993, denial of his motion for reconsideration of the sanctions order. In B076762, Shieh purports to appeal from "any and all rulings, decisions, judgements [*sic*] and orders . . . rendered, issued or made . . . on and before the filing of this Notice of Appeal, and any and all rulings, decisions, judgements [*sic*] and orders rendered, issued or made . . . subsequently in connection with, arising under or relating to the above Orders." He has been ordered to demonstrate that the appeal has merit or face its dismissal.

[3]Say & Say is a corporation owned and controlled solely by Shieh.

*Thompson, et al.,* LASC Case No. NEC 54381 (Appeal pending: 2d Civil No. B064714)."[4]

Once again, Shieh alleges the defendants "determined to stamp out a nettlesome competitor in the Pacific Rim . . . region of the legal services industry," himself. The defendants entertained personal enmity against him and the firms exchanged information about him in pursuit of their common goals. The defendants repeatedly made false statements impugning Shieh's character and the quality of the legal services he provided. These statements were made to Shieh's past or present clients, those thought to be his potential clients and those associated with law firms believed to be considering or to have a professional association with Shieh. The defendants agreed to make such statements jointly and simultaneously in a manner calculated to suggest corroboration of each others' statements. They kept confidential personnel files on Shieh and disclosed private information about him to each other and to the public at large.

O'Melveny & Myers wrongfully kept clients Shieh had brought to the firm, refusing to release the client files to him. Gibson, Dunn & Crutcher did the same. These defendants knew Shieh had a contractual arrangement with another defendant, Richard Tarlow (Tarlow), who was acting as his attorney. Defendants attempted to induce Tarlow to breach his contract with Shieh. They succeeded.

On December 11, 1992, the superior court declared Shieh to be a vexatious litigant in both the Christopher case and the Castellano case pursuant to Code of Civil Procedure section 391, subdivision (b)(3) and (4), and ordered in the Christopher case that he furnish security in the form of two bonds for $100,000 each for the benefit of O'Melveny & Myers and Gibson, Dunn & Crutcher jointly and for the benefit of Tarlow. The action was stayed pending the furnishing of the security, and the court issued a prefiling order pursuant to Code of Civil Procedure section 391.7 prohibiting Shieh from filing any new litigation in any court of this state without first obtaining leave of the presiding judge of the court in which he sought to file.[5]

On April 22, 1993, the superior court again declared Shieh to be a vexatious litigant in the Castellano case upon the motion of another defendant, Ivy Yuen. The court ordered Shieh to furnish security by posting a bond

[4]As noted *ante,* the orders of dismissal were affirmed in *Shieh* v. *Newman* (Sept. 16, 1992) B059327 (nonpub. opn.), and *Hsieh* v. *Thompson* (Feb. 1, 1993) B064714 (nonpub. opn.).

[5]An appeal filed on May 1, 1993 was dismissed on June 17, 1993. Shieh has again appealed from orders made in these cases, filing notices of appeal in *Shieh* v. *Christopher* (May 28, 1993) B076400 (nonpub. opn.); (June 3, 1993) B076762 (nonpub. opn.); and *Say & Say* v. *Castellano* (June 1, 1992) B076656 (nonpub. opn.); (June 8, 1993) B076709 (nonpub. opn.). In the *Christopher* case, there is currently pending a motion to dismiss B076400 for lack of jurisdiction. We have ascertained that no final judgment had been filed in this case as of June 25. Accordingly, nothing in these appeals affects the vexatious litigant order. In the

for $100,000 and stayed the action until the security was furnished; additionally, Shieh was ordered to show cause on June 3 why the action should not be dismissed as to Ms. Yuen if the security had not been furnished by that time. Finally, the court scheduled for hearing on May 24 the motion of defendant Household Bank for a similar order. Shieh failed to appear on the latter date, and was adjudged in contempt; a bench warrant currently is outstanding for Shieh. This court recently entertained and denied a petition for a writ of mandate based on these orders (*Shieh* v. *Superior Court (Castellano)* (July 7, 1993) B076637 [nonpub. opn.], den. July 15, 1993) and another challenging all vexatious litigant orders in both the Christopher and the Castellano cases (*Shieh* v. *Superior Court (Castellano and Christopher)* (July 8, 1993) B076677 [nonpub. opn.], den. July 15, 1993).

In an order dated February 26, 1993, Judge Ted Millard of the Orange County Superior Court, sitting by assignment, heard challenges to Judge Edward Y. Kakita in the Christopher and Castellano cases, as well as a third case. Judge Millard also declared Shieh to be a vexatious litigant, noting he was waging a "campaign of litigation terror," and District Court Judge Dickran Tevrizian likewise had declared Shieh vexatious. That order is final.

In Say & Say v. Layman, *supra*, Shieh alleged Attorney Francisca Araiza (Araiza) and Say & Say had an oral agreement under which Araiza would render legal services as assigned by Shieh. Araiza breached the agreement, mishandled cases and cooperated with other defendants to steal files and other property belonging to Say & Say. Additionally, she sent disparaging letters to Shieh's clients and conspired with Imperial Savings with respect to the payment of checks drawn on a particular account. Finally, Araiza filed suit in state court and sought a preliminary injunction only as a means of harassing Say & Say and Shieh. Based on these allegations, Say & Say and Shieh purported to state causes of action for breach of contract, fraud, conversion, intentional interference with prospective economic advantage, legal malpractice, breach of fiduciary duty, trespass, invasion of privacy, intentional infliction of emotional distress, unfair competition, abuse of process, breach of the covenant of good faith and fair dealing, violation of RICO and violation of federal civil rights. In other words, this action involves facts substantially similar to those of the instant action and other cases and recites an indistinguishable litany of grievous wrongs.

On April 16, 1992, the district court dismissed the state law claims, since they predominated substantially over the federal claims. On April 21, the court dismissed the federal civil rights claims on the ground that there was

---

*Castellano* case, it is impossible to ascertain the nature of the rulings from which Shieh's all-encompassing notices purport to appeal.

no state action alleged, but gave Say & Say and Shieh 10 days in which to amend their complaint. They filed no amendment, and the court dismissed the federal civil rights claims with prejudice on May 20, 1992.

On April 13, 1992, the court heard Araiza's motion to dismiss the remainder of the action for discovery abuse and/or to compel Shieh's attendance at his deposition; another defendant's motions to dismiss, for a protective order staying or limiting discovery and for sanctions against Shieh and a third defendant's motions to dismiss for failure to state a claim and for sanctions against Shieh. On April 14, the court assessed sanctions against Shieh in the aggregate sum of $5,490.50. Plaintiffs moved for reconsideration of the imposition of sanctions; the motion was heard on June 8, 1992, as was plaintiffs' motion to dismiss the action voluntarily.

The district court denied the motion for reconsideration, dismissed the action with prejudice and, on June 18, ordered Shieh and his cocounsel, James L. Andion (Andion), to show cause why each of them should not be sanctioned for reprehensible conduct during the course of the action. Shieh was ordered to show cause why he should not be sanctioned pursuant to Federal Rules of Civil Procedure, rule 11, for filing the complaint and why he should not be sanctioned pursuant to 28 United States Code section 1927 for filing a reply on June 2 to the opposition to the motion for reconsideration of the sanctions.

On July 21, 1992, plaintiffs sought to disqualify Judge John G. Davies. The motion for recusal was returned to the court clerk for assignment of a judge to rule on it. On July 29, 1992, Judge Gadbois denied the motion.

In an order filed September 1, 1992, the district court noted that "[b]y signing a document filed with the Court, the signator represents that after reasonable inquiry, the document is well grounded in fact and warranted by existing law, and that it is not interposed for an improper purpose. [Citation.]" Shieh had signed the complaint, which purported to state 12 state causes of action, a RICO claim and a federal civil rights claim. However, the plaintiffs had not alleged any state action in their civil rights claim and failed to amend when given the opportunity to do so. Consequently, the civil rights claim was dismissed. Additionally, plaintiffs never filed the RICO case statement required by court order; instead, they expressed a desire to abandon that claim.

The district court concluded, "[a]n objective review of plaintiffs' complaint reveals the paucity of their federal claims. The allegations concerning civil rights and RICO are completely insufficient to support those causes of

action. Plaintiffs admitted as much by failing to amend their civil rights claim and by failing to file a RICO case statement. Thus, plaintiffs' complaint was not well grounded in fact nor warranted by existing law. The complaint was frivolous and was filed in this Court to harass, and to frustrate the progress of a state court action previously filed by Ms. Araiza." Accordingly, Shieh must be sanctioned for his conduct. The court thereupon imposed sanctions of $7,500 for filing the complaint to be paid to Araiza and her attorneys within 20 days of the entry of the order.

The court additionally noted Shieh was "liable for sanctions for his involvement in the filing of Plaintiffs' Reply. The Court has inherent power to impose sanctions against both attorneys and parties for bad faith conduct in litigation. [Citation.] 'Bad faith' means that the party or counsel acted 'vexatiously, wantonly, or for oppressive reasons.' [Citation.]" Shieh was both a named plaintiff and an attorney for the plaintiffs. His name appears as counsel on the reply, "which contains inflammatory, disparaging and uncivil remarks directed at both the parties interested in this action and the Court. The Court finds that the Plaintiffs' Reply was filed in bad faith and for vexatious reasons." Accordingly, the court imposed sanctions of $2,500 against Shieh for the filing of the reply. That sum was to be paid to the court clerk within 20 days of the entry of the order.[6]

In short, the court declared Shieh to be a vexatious litigant. He had filed a groundless, wholly frivolous complaint with highly improper motives and had filed other documents for purely vexatious reasons.

### DISCUSSION

Subdivision (b)(4) of Code of Civil Procedure section 391 defines a vexatious litigant as a person who "[h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." It is immaterial that Shieh presently is represented by counsel. (*Muller* v. *Tanner* (1969) 2 Cal.App.3d 438, 444 [82 Cal.Rptr. 734].) As outlined *ante*, Shieh has been declared a vexatious litigant in the United States District Court for the Central District of California and by two separate superior court judges in three distinct cases, all of which are based on facts substantially similar and make claims substantially similar to the facts asserted and claims made in the litigation underlying the Fulbright & Jaworski appeals. Hence, he clearly fits the definition of a vexatious litigant.

Moreover, since Shieh's appeals in the instant matter have been dismissed, there clearly is no likelihood he will prevail. While Shieh may

---

[6]The court also imposed sanctions of $2,500 against Andion.

revive one of the appeals partially upon timely payment of the sanctions which are the subject of the order from which he appeals, the general tenor of his conduct in the trial and appellate courts of this state demonstrates that there still will be no reasonable likelihood that he will succeed in overturning the award of sanctions.

The repeated imposition of sanctions in the trial courts and this court, the requirement that he post security in two superior court actions and the existence of other prefiling orders has had no discernible effect on Shieh's out-of-control litigation. Consequently, we have no choice but to impose our own prefiling order pursuant to Code of Civil Procedure section 391.7, subdivision (a).

The court finds that Liang-Houh Shieh is a vexatious litigant within the meaning of Code of Civil Procedure section 391, subdivision (b)(4). Ordinarily, pursuant to section 391.7, subdivision (a) of the Code of Civil Procedure, Shieh would not be permitted to file "any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." This case, however, breaks the mold.

It is apparent from syntax, grammar, style and tone that, both in the trial courts and in this court, many—if not most—of the pleadings and other documents filed by Shieh or on his behalf have been written by the same person. This is the case even though Shieh has filed many of the initial pleadings in propria persona and then associated in cocounsel or substituted in a variety of replacement counsel, some of whom in turn become defendants in new litigation Shieh initiates. It is patently obvious that *every* writ petition, notice of appeal, appellant's brief and opposition to orders to show cause filed in this division has been drafted by the same hand, even though Shieh ostensibly has appeared in propria persona and through two separate attorneys, Guy Rollins and James L. Andion.

In short, it is clear that Shieh does not engage attorneys as neutral assessors of his claims, bound by ethical considerations not to pursue unmeritorious or frivolous matters on behalf of a prospective client. (Cf. *Taliaferro* v. *Hoogs* (1965) 236 Cal.App.2d 521, 527 [46 Cal.Rptr. 147].) Rather, these attorneys who ostensibly "represent" Shieh serve as mere puppets. Based on these facts, we conclude a prefiling order limited to Shieh's in propria persona activities would be wholly ineffective as a means of curbing his out-of-control behavior.

Accordingly, Liang-Hough Shieh may not file any new litigation in the courts of this state, whether in propria persona or through an attorney,

without first obtaining leave of the presiding judge of the court in which he proposes to file the litigation, as provided in Code of Civil Procedure section 391.7, subdivision (b). Moreover, whether he acts in propria persona or through an attorney, before filing appeals or writ petitions in this court, Shieh must seek leave from the Administrative Presiding Justice. Disobedience of this order will be punished as a contempt of court. (*Id.*, subd. (a).) The clerk of this court is directed to provide a copy of this opinion and order to the Judicial Council. (*Id.*, subd. (d).) Copies shall also be mailed to the presiding judges and clerks of the Los Angeles, Orange and Ventura County Superior Courts and each branch of the Los Angeles County Municipal Court. Additionally, inasmuch as Shieh is an attorney, and engaging in vexatious litigation smacks of grievously unethical conduct, a copy shall be mailed to the State Bar.

Finally, we wish to provide some guidance to the trial courts. Every court has the power "[t]o compel obedience to its . . . orders . . . ." (Code Civ. Proc., § 128, subd. (4).) Shieh currently has outstanding in the trial courts $305,326.90 in unpaid sanctions in five separate cases. We suggest to the trial courts that it would be appropriate, upon notice and an opportunity to be heard, to consider dismissing these cases for failure to pay the sanctions.

Ortega, J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied August 31, 1993, and petitioner's application for review by the Supreme Court was denied November 4, 1993. Panelli, J., was of the opinion that the application should be granted.