[No. B186670. Second Dist., Div. Two. Apr. 25, 2007.]

ERNESTINE FORREST, Plaintiff and Appellant, v.
DEPARTMENT OF CORPORATIONS et al., Defendants and Respondents.

186

COUNSEL

Dunn Koes, Pamela E. Dunn, Daniel J. Koes and Mayo Makarczyk for Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Silvia M. Diaz and Patricia A. Nevonen, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**DOI TODD, J.**—Appellant Ernestine Forrest filed suit against respondents in propria persona. At the time she had been designated a vexatious litigant and was subject to a prefiling order which prohibited her from filing suit without counsel or obtaining permission from the presiding judge to proceed unrepresented. Forrest later retained counsel, but the court permitted counsel to withdraw on the day the case was set for trial. When appellant failed to retain new counsel after a number of continuances, the court dismissed the case and later denied reconsideration of the dismissal when Forrest appeared with counsel.

■ We hold here that the trial court has authority under Code of Civil Procedure section 391.7[1] to dismiss a lawsuit during the pendency of litigation when a vexatious litigant under a prefiling order is not represented by counsel and has not obtained permission from the presiding judge to proceed unrepresented. We find no abuse of discretion and affirm the dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

*Forrest Declared a Vexatious Litigant*

In 1994, Division Five of this court declared Forrest a vexatious litigant and issued a prefiling order pursuant to section 391.7, subdivision (a) that prohibited her from filing any new litigation in propria persona without first obtaining leave of the presiding judge of the court where the litigation was proposed to be filed. (*Forrest v. Sargoy* (Apr. 25, 1994, B077881) [nonpub. opn.].) That order remained in effect throughout these proceedings.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Forrest's Employment and Termination*

Forrest was employed as an attorney by respondent Department of Corporations (DOC) between 1989 and 2004. Respondents Brian Thompson and Morton Riff were also DOC employees. While employed by DOC, Forrest made a number of complaints of race and gender discrimination against DOC, alleging wrongful acts and retaliation. She was terminated by DOC in 2000 and then reinstated by the State Personnel Board in 2002.[2]

*Forrest Initiates a Lawsuit in Propria Persona, Then Appears With Counsel*

On February 24, 2003, Forrest filed this suit against respondents in propria persona alleging wrongful termination, race and gender discrimination, harassment, retaliation and breach of contract. The case was assigned to Judge Thomas L. Willhite, Jr. Forrest was represented by Attorney David J. Duchrow at a case management conference held on May 16, 2003. The complaint had not been served on respondents at that time. On June 27, 2003, Duchrow filed and served a first amended complaint (FAC), asserting the same causes of action but including more detail with respect to Forrest's termination and DOC's alleged wrongful acts.

*Demurrer, Summary Adjudication, Mistrial*

Respondents demurred and moved to strike portions of the FAC. The trial court sustained the demurrer of the individual defendants to one cause of action and struck the word "age" from the FAC. The demurrer was otherwise overruled and the motion to strike denied. DOC filed an answer and litigation proceeded.

On August 19, 2004, DOC filed a motion for summary adjudication, which the trial court granted in part, deemed moot in part, and denied in part on November 9, 2004.

The case was set for trial in August 2004, and then continued to December 7, 2004. Prior to the December 7 trial date, Duchrow informed Forrest by facsimile that he would be withdrawing as counsel, but he did not in fact withdraw at that time. The December trial date was continued to January 18, 2005, then January 31, and then February 7. On February 4, 2005, Duchrow informed Forrest by letter that he would withdraw on February 7, but filed no motion with the court seeking to withdraw.

A jury trial commenced February 8, 2005. After the first witness began testimony, Judge Willhite declared a mistrial when he was nominated to the

---

[2] Forrest was again terminated by DOC during the pendency of this action.

Court of Appeal and became unavailable to complete the case. The case was reassigned to Judge Tricia Ann Bigelow on March 28, 2005, and a final status conference and trial were set on June 20, 2005.

*Attorney's Motion to Be Relieved as Counsel*

On June 17, 2005, Duchrow filed a motion on shortened notice to be relieved as counsel. He simultaneously filed an ex parte application to continue the trial for 120 days to allow Forrest to retain new counsel.

At the June 20 hearing, DOC's counsel indicated she did not oppose Duchrow's withdrawal; however, she did oppose the continuance because of witness health issues. The trial court conferred with Duchrow, pointing out that there were two witnesses with significant health problems, respondent Morton Riff and Susan Wood. The trial court then inquired: "And if there is a need for a continuance in this case, would you stipulate that both of those witnesses can be videotaped for the questions and answers to be used at trial?" Duchrow responded: "I was going to suggest that."

The trial court sealed the reporter's notes of an in camera hearing with Duchrow regarding his motion to withdraw and granted the motion. With respect to DOC's witnesses, the trial court reiterated in open court that Duchrow had "stipulated to the fact that Morton Riff and Susan Wood . . . can have their trial testimony reported." DOC's counsel then clarified that it was Wood's testimony that required videotaping. The court's order read: "The court finds good cause and orders the deposition of Wood to proceed." But Forrest argued that if Duchrow was no longer her attorney, he could not stipulate to the videotaping. The trial court rejected this argument: "It was stipulated before he was relieved as counsel but, nevertheless, I will order it, finding good cause in light of the fact that—this is as to Wood, right?" Forrest objected, asking "shouldn't this be a noticed motion? Shouldn't I have a right to respond?" Forrest and the trial court then engaged in a lengthy discussion about whether Duchrow could be permitted to withdraw.

During this discussion, DOC revealed that Forrest had been designated a vexatious litigant. Ultimately, the trial court advised Forrest that she should retain counsel to advise her on her request to waive her privilege as to the matters Duchrow had revealed in camera and to "either agree or not agree as to whether or not [Duchrow's] stipulation is appropriate and then I will hear it then."

The court asked Forrest how much time she needed to hire another attorney. Forrest responded that "attorneys don't like to come into this kind of circumstance." The court then stated: "[I]f there is a necessity for continuance, I am going to have to consider that. So I will give you two weeks." The

court then set an OSC (order to show cause) hearing for July 7, 2005, "re failure of plaintiff to retain counsel . . . ." In response to Forrest's question about the purpose of the July 7 OSC, the court clarified: "For you to get new counsel; with regard to whether or not you want to disclose and have Mr. Duchrow represent you and potentially for that person being appointed as your trial counsel for all purposes, okay?" With respect to the trial date, the court stated: "Why don't we continue the trial to the 7th, with the understanding if new counsel comes in I, obviously, am not going to make him pick up the paper and have him pick it up and go to trial that same date."

*July 7, 2005 OSC*

Forrest filed a response to Duchrow's motion to be relieved as counsel, calling it an "unjustified abandonment on the date of trial" and describing her efforts to obtain new counsel. She informed the trial court that when first instituting the lawsuit she had difficulty locating counsel because employment attorneys advised her they did not like litigating with the government. She also stated, "I attempted to initiate contact with a lawyer to consult after the June 20, 2005 proceedings but he was away on vacation. I now have an appointment with that lawyer on Wednesday, July 6, 2005." At the OSC hearing on July 7, Forrest advised that she did not yet have counsel, that she had not yet been able to retrieve the case file from Duchrow, and that she questioned the judge's neutrality given her past working relationship with defense counsel. In response, the court informed Forrest that she would "hear any motion that you have if you have an attorney here in two weeks . . . ."

DOC's counsel raised the issue of the videotaped testimony: "At the last hearing you gave us authorization to videotape the trial testimony of . . . Wood, and we were unsure as to the procedure for doing that since . . . Forrest is between attorneys. How much notice you think we should give her in fairness of doing that, since she won't be allowed to participate?" The trial court set an OSC regarding dismissal for failure to retain counsel for July 22, 2005, and instructed DOC to set the deposition after July 22, 2005.

*July 22, 2005 OSC and DOC's Request for Dismissal*

On July 22, 2005, Forrest filed an update regarding her efforts to retain counsel. In her declaration she explained that since the June 20 hearing her only contact with Duchrow had been when he told her to pick up her case file from him, that her courier tried repeatedly to do so, and that the files were obtained on July 15. She stated that she was not certain that she had been given the full file. She stated that the attorney with whom she met on July 6, 2005, could not represent her due to his involvement in another major case. Forrest also met an attorney at a lawyer function on Saturday, July 16, 2005,

but was unable to schedule a meeting with him until July 25, 2005. On July 21, she contacted another lawyer, who had been referred to her on July 6, but she learned he could not talk to her until he returned from vacation the following week. Forrest also contacted the attorney who had originally referred her to Duchrow to see if his firm could represent her. She stated that it initially took her three months to find counsel. Forrest argued that the court had no authority to dismiss her action and requested a stay. After conferring with Forrest and counsel, the trial court continued the OSC to August 4, 2005.

On July 28, 2005, DOC filed a request for dismissal pursuant to section 391.7, subdivision (c).[3]

*August 4, 2005 OSC*

On August 4, 2005, Forrest filed another response to the OSC and responded to DOC's request for dismissal. She explained her further efforts to retain new counsel, which consisted of a conversation with an attorney who declined to represent her due to his relationship with Duchrow and conversations with Patricia Barry who showed an interest in taking the case and agreed to appear at the August 4 hearing. Forrest opposed DOC's request for dismissal, arguing that her case had merit and was ready for trial.

Ms. Barry did appear on August 4 and represented that she and Forrest were in discussions but that she had not been retained. The trial court again continued the OSC, informing Forrest that the case would be dismissed if she did not retain counsel by August 11, 2005.

*August 11, 2005 OSC and Dismissal*

Forrest filed another update prior to the August 11, 2005 OSC hearing. Her declaration stated she was out of town on a business trip from August 4 through August 10, that she had spoken with Patricia Barry by telephone on the evenings of August 9 and 10 and that unresolved issues remained with respect to Ms. Barry's representation. Forrest offered to "post security so that

---

[3] Section 391.7, subdivision (c) provides in pertinent part: "The clerk may not file any litigation presented by a vexatious litigant subject to a prefiling order unless the vexatious litigant first obtains an order from the presiding judge permitting the filing. If the clerk mistakenly files the litigation without the order, any party may file with the clerk and serve on the plaintiff and other parties a notice stating that the plaintiff is a vexatious litigant subject to a prefiling order as set forth in subdivision (a). The filing of the notice shall automatically stay the litigation. The litigation shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding judge permitting the filing of the litigation . . . ."

this case can proceed to trial . . . ." During the hearing, Forrest requested another judge based on the court's disclosed relationship with defense counsel.

With respect to preserving Wood's testimony, DOC's counsel noted: "I wanted to mention that as we keep straggling this along, you did previously give us permission to videotape the trial testimony of witness . . . Wood. But at one point you asked us to wait until after July 22nd, because the case might be dismissed at that point. We have now learned that . . . Wood spent another 12 days in the hospital in July, and she is not currently answering her phone. We're not sure if we're going to be able to even videotape her trial testimony at this point. So I think that dismissal would be the appropriate action today." Forrest again offered to post security.

On August 12, 2005, the trial court issued its ruling, dismissing Forrest's complaint on the grounds that she had failed to retain counsel after several continuances. The trial court served notice of its ruling on all parties by mail on that date. DOC then served notice of entry of the order dismissing the case on Forrest by express mail on August 22, 2005.

*Motion for Reconsideration*

On August 26, 2005, Forrest filed a substitution of attorney form reflecting that she was represented by Attorney Edi M. O. Faal. On August 29, 2005, Forrest filed a motion to reconsider and revoke the order of dismissal pursuant to section 1008. Her new attorney argued that the motion was based upon new facts, namely Forrest's retention of counsel. He also relied on the "basic rule of law that all effort should be made to resolve cases based on the merits."

DOC opposed Forrest's motion, arguing that it was untimely, not based on new facts, and failed to set forth any justification for failing to discover the allegedly new facts prior to the order of dismissal.

The trial court denied Forrest's motion for reconsideration. Forrest timely appealed from both the order of dismissal and the subsequent order denying her motion for reconsideration.

## DISCUSSION

### I. *Contentions on Appeal and Standard of Review*

Forrest contends that the trial court erred in (1) allowing Duchrow to withdraw on the day of trial; (2) dismissing the action without a statutory

basis to do so; (3) failing to provide an adequate continuance to allow Forrest to retain new counsel; and (4) denying reconsideration based on her retention of new counsel.

The trial court's orders are reviewed for an abuse of discretion. (See *Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1350 [32 Cal.Rptr.3d 717]; *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1246 [9 Cal.Rptr.3d 821]; *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 [45 Cal.Rptr.2d 695].) Under that standard, we determine "whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911].) We presume an order is correct and imply findings necessary to support the judgment. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219 [120 Cal.Rptr.2d 879] (*Bravo*).) An abuse of discretion must be clearly established to merit reversal on appeal. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].) To the degree resolution of the appeal requires statutory interpretation, we undertake that review de novo. (*Bravo, supra*, at p. 219.)

## II. *No Error Established in Permitting Counsel to Withdraw*

Forrest contends that allowing Duchrow to withdraw on the day of trial was an abuse of discretion.

Duchrow filed a declaration in support of his motion to withdraw stating that he had an irreparable conflict with Forrest, continued representation would require him to violate ethical rules, Forrest had breached the fee agreement and continuing would pose an extreme financial hardship on him, Forrest had rendered his continued effective employment on the case unreasonably difficult, and she refused to follow his advice. In order to protect attorney-client privileged matters, the court conducted a hearing with Duchrow in camera with a court reporter present. After the proceedings in chambers, the court explained in open court that granting Duchrow's motion to be relieved was based on matters discussed in camera.

Judgments and orders are presumed correct on appeal, and the appellant bears the burden of overcoming that presumption by affirmatively demonstrating reversible error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 [104 Cal.Rptr.2d 377, 17 P.3d 735]; *Estate of Davis* (1990) 219 Cal.App.3d 663, 670, fn. 13 [268 Cal.Rptr. 384].) The appellant must provide an adequate record to demonstrate that error. (*Ibid.*) Forrest has failed to do so on this issue. She has not provided a record of the in camera hearing

during which Duchrow stated his reasons for seeking withdrawal. Without that transcript, we presume the order permitting Duchrow to withdraw was correct.

## III. *The Trial Court Had Authority to Dismiss the Action*

Forrest contends that the trial court lacked authority to dismiss her action. In particular she argues that section 391.7 applies only to the initial filing of a lawsuit and has no application to a pending action. We disagree with Forrest's interpretation of section 391.7.

### A. *Section 391.7 Generally*

The vexatious litigant provisions provide two general ways in which a vexatious litigant may proceed with a lawsuit. Sections 391.1 through 391.6 outline a procedure for a defendant to move in a pending case to require the posting of security by a plaintiff shown to be a vexatious litigant who does not have reasonable probability of prevailing in the litigation. (§§ 391.1–391.3.) If the plaintiff fails to post the bond, the action must be dismissed as to the moving defendant. (§ 391.4.)

Under section 391.7, "the court may, on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." Disobedience of a prefiling order is punishable as contempt. (§ 391.7, subd. (a).)

"The presiding judge shall permit the filing of that litigation only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay . . . [and] may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3." (§ 391.7, subd. (b).)

Under section 391.7, subdivision (c), the court clerk is not permitted to file any litigation presented by a litigant subject to a prefiling order unless the vexatious litigant first secures permission to file from the presiding judge. If the litigation is mistakenly filed by the clerk without the order, any party may file a notice that the plaintiff is a vexatious litigant which automatically stays the litigation. Unless the plaintiff obtains an order of permission within 10 days of the filing of that notice, the litigation is automatically dismissed. (§ 391.7, subd. (c).)

Section 391.7 has been broadly interpreted. Subdivision (a) has been construed to require a vexatious litigant to obtain permission to litigate even

though represented by an attorney. (*In re Shieh* (1993) 17 Cal.App.4th 1154, 1167 [21 Cal.Rptr.2d 886].)[4] And an appeal filed in a pending lawsuit has been held to fall within the definition of "new litigation" under section 391.7. (*McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211 [73 Cal.Rptr.2d 288] (*McColm*).)

B. *"New Litigation"*

Forrest argues that section 391.7 can only support the dismissal of a newly filed, and not a pending, lawsuit. She relies on standard axioms of statutory construction in explaining that the word "new" in the phrase "new litigation" in section 391.7 would be meaningless if it were construed to apply to pending actions.

■ "[W]e do not construe a statute in isolation, but review it in context of the entire statutory scheme to which it belongs, harmonizing all sections to retain its effectiveness." (*Bravo, supra*, 99 Cal.App.4th at p. 220.) ■ Sections 391.1 through 391.6 place no limitation on when in the course of litigation a litigant can be designated "vexatious." "Litigation" is defined in section 391, subdivision (a) to mean "any civil action or proceeding, commenced, maintained or pending in any state or federal court." Section 391.7 was later enacted to broaden the reach of the vexatious litigant statute. (Added by Stats. 1990, ch. 621, § 3, p. 3072;[5] see generally *Camerado, supra*, 12 Cal.App.4th at p. 843 ["[a] review of the 1990 amendments demonstrates the Legislature's intent to broaden the reach of the vexatious litigant statute"].)

Section 391.7, subdivision (a) enables a court, on its own motion or that of any party, to prohibit the future filing of "any new litigation" by a vexatious litigant in propria persona without first obtaining leave from the presiding judge. (§ 391.7; see *McColm, supra*, 62 Cal.App.4th at p. 1216.) In the context of this statutory scheme, the word "new" plainly refers to a civil lawsuit filed *after* entry of the prefiling order. It does not, as Forrest contends, refer to an early procedural stage in the lawsuit.

■ We are guided in our interpretation by the broad definitions employed throughout the vexatious litigant sections. As already noted, the definition of

---

[4] Similarly, in *Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838, 840 [16 Cal.Rptr.2d 42] (*Camerado*) the court held that a vexatious litigant could be required to post security under section 391.3 in a pending action even though represented by counsel.

[5] That bill expanded the scope of the vexatious litigant title in a number of ways: the definition of "vexatious litigant" was expanded to include those previously declared vexatious by any state or federal court in an action based on similar facts or the same transaction or occurrence (§ 391, subd. (b)(4)); the definition of "plaintiff" was clarified to include "an attorney at law acting in propria persona" (§ 391, subd. (d)), and the definition of "defendant" was amended to include a "firm or governmental entity . . . ." (§ 391, subd. (e).)

"litigation" encompasses lawsuits beyond the initial filing to include those that are maintained or pending.[6] And a litigant may be designated "vexatious" for actions throughout the life of a lawsuit, not merely at its commencement. A vexatious litigant is defined as one who has "commenced, *prosecuted, or maintained* in propria persona" at least five litigations meeting certain criteria (§ 391, subd. (b)(1), italics added), or one who "repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (§ 391, subd. (b)(3).) It would be anomalous for the statute to permit the entry of a prefiling order based on a litigant's bad faith acts throughout a lawsuit but then limit application of the order to the filing of a new lawsuit and have no application during its pendency.

On the other hand, the statutory scheme as a whole can be reconciled by recognizing that the terms of the prefiling order—representation by counsel or permission to file—pertain throughout the life of the lawsuit.[7] We therefore hold that the requirements of a prefiling order, under section 391.7, remain in effect throughout the life of a lawsuit and permit dismissal at any point when a vexatious litigant proceeds without counsel or without the permission of the presiding judge.[8]

### C. *Potential Merit*

Forrest contends that a meritorious lawsuit cannot, as a matter of law, be dismissed under section 391.7. We disagree. We acknowledge that a primary purpose underlying the vexatious litigant provisions is curtailing unmeritorious lawsuits. (*Bravo, supra*, 99 Cal.App.4th at p. 221.) But the statutes also exist to curtail repetitious and harassing behavior. This is evident in the standard to be employed by a presiding judge in determining whether to permit a filing under section 391.7. That standard is stated in the conjunctive: "The presiding judge shall permit the filing of that litigation only if it appears that the litigation has merit *and* has not been filed for the

---

[6] Similarly, the definitions of "plaintiff" and "defendant" encompass the parties' roles during all phases of litigation. A "plaintiff" is one who "commences, institutes or *maintains*" a lawsuit, and "defendant" means a person or entity "against whom a litigation is brought or *maintained* or sought to be brought or *maintained.*" (§ 391, subds. (d), (e), italics added.)

[7] Of course, section 391.7, subdivision (c) anticipates that a dismissal of an action filed without permission will occur early in the litigation. That is so because if the statutory scheme is properly implemented, the issue will typically arise upon filing. It did not arise at that early stage in the present lawsuit only because Forrest did not serve her lawsuit until after she had retained counsel and he filed and served a first amended complaint.

[8] Because section 391.7, subdivision (c) addresses only a dismissal for failure to procure permission to file, it cannot fairly be read as a limitation on the trial court's inherent power to enforce that provision of the prefiling order requiring representation and ultimately to dismiss for Forrest's failure to abide the court's orders. (See *In re Shieh, supra*, 17 Cal.App.4th at p. 1168 ["[e]very court has the power '[t]o compel obedience to its . . . orders . . . .' "].)

purposes of harassment or delay." (§ 391.7, subd. (b), italics added.) The plain language of the statute encompasses the possibility that an otherwise meritorious lawsuit may be disallowed if shown to be harassing or for the purposes of delay.

It has been recognized that substantive merit is not the only concern underlying section 391.7. In *McColm, supra,* 62 Cal.App.4th at page 1216, footnote 4, for example, the court explained: "When the litigant is subject to a prefiling order, even if the court finds high enough probability of success to allow the litigant to proceed, it may compel the litigant to furnish security as a condition to maintaining the action." (See also *id.* at p. 1221, fn. 10 ["[T]he Judicial Council advised the Legislature against authorizing security when presiding judges conclude the new litigation has possible merit. It is clear from the wording of section 391.7, subdivision (b), however, that the Legislature did not follow the Judicial Council's advice"].)

"To the extent [section 391.7] keeps vexatious litigants from clogging courts, it is closer to 'licensing or permit systems which are administered pursuant to narrowly drawn, reasonable and definite standards' which represent 'government's only practical means of managing competing uses of public facilities[.]' [Citation.]" (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 60 [61 Cal.Rptr.2d 694].)[9] Granted, " '[w]hen a vexatious litigant knocks on the courthouse door with a colorable claim, he may enter.' " (*PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 975 [5 Cal.Rptr.3d 532], fn. omitted.) But that entry may be conditioned on representation by counsel or permission from the presiding judge to proceed pro se along with the posting of security. (§ 391.7, subds. (a), (b).) When those conditions are not met, dismissal may be an appropriate remedy even if the lawsuit is meritorious. (§ 391.7, subds. (a), (c).) The fact that Forrest's lawsuit survived demurrer and summary adjudication did not preclude dismissal, as a matter of law, under the vexatious litigant statutes when the prerequisites to dismissal under those provisions were otherwise met.

### D. *Security*

Forrest challenges that portion of the trial court's order that bases the dismissal on Forrest's failure to post a bond "as ordered." Forrest is correct that a bond was never ordered in this case and that the order is mistaken in that regard. But a decision that is otherwise correct will not be reversed merely because it was based on faulty reasoning. Rather, the order will be sustained if correct on any legal theory supported by the record. (*In re*

---

[9] In *In re Whitaker* (1992) 6 Cal.App.4th 54, 57 [8 Cal.Rptr.2d 249], the court recognized that it is not only the opposing parties that are injured by vexatious litigants but also litigants in other actions, the court system and the taxpayers by virtue of wasted resources.

*Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) Because we find the order correct for other reasons, this mistaken ground for dismissal does not warrant reversal.[10]

Because she was subject to a prefiling order under section 391.7, subdivision (a), Forrest could maintain her action only if she was represented or if she obtained permission from the presiding judge. Because neither condition was satisfied, the trial court had the authority to dismiss the lawsuit.[11]

## IV. *Denial of Further Continuances Was Not Abuse of Discretion*

California Rules of Court, rule 3.1332 provides that "[a]lthough continuances of trials are disfavored," the unavailability of trial counsel due to "excusable circumstances" or a substitution of counsel that is "required in the interests of justice" can constitute good cause for a continuance. (Cal. Rules of Court, rule 3.1332(c)(3), (4).) In considering a trial continuance based on the unavailability of counsel, the trial court "(d) . . . must consider all the facts and circumstances that are relevant to the determination," including "(3) [t]he length of the continuance requested; [¶] (4) [t]he availability of alternative means to address the problem that gave rise to the motion or application for a continuance; [¶] (5) [t]he prejudice that parties or witnesses will suffer as a result of the continuance; [¶] . . . [¶] (10) [w]hether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and [¶] (11) [a]ny other fact or circumstance relevant to the fair determination of the motion . . . ." (Cal. Rules of Court, rule 3.1332(d)(3)–(5), (10), (11).)

Duchrow's withdrawal constituted good cause for a continuance under California Rules of Court, rule 3.1332. Furthermore, "the constitutional due process guarantee does embrace" the right of a civil litigant to be represented by retained counsel (*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925 [211 Cal.Rptr. 77, 695 P.2d 164]).[12] But the right to representation and to a continuance to allow for that representation is not unlimited and must be considered and balanced with any possible detriment to other parties and the efficient administration of justice. (See generally Cal. Rules of Court, rule

---

[10] Forrest offered during the hearings below to post a bond so that the matter could proceed. But the proper procedure to do so was to seek permission from the presiding judge. Had a bond been warranted, the presiding judge would have ordered it before allowing her to proceed in propria persona. (§ 391.7, subd. (b).)

[11] Having affirmed the dismissal under section 391.7, we need not also address Forrest's arguments against dismissal based on section 581.

[12] We do not consider here the impact of Forrest's status as a vexatious litigant on her right to a continuance under California Rules of Court, rule 3.1332 or her constitutional right to counsel. (See generally § 391.7, subd. (c) [court may dismiss on 10 days' notice of violation of prefiling order].)

3.1332.) There is no specific timeframe within which a litigant has a right to seek counsel, such as the 120 days appellant argues here. (See generally *Agnew v. Parks* (1963) 219 Cal.App.2d 696, 701 [33 Cal.Rptr. 465].) We review the court's determination based on an abuse of discretion standard.

### A. *Prejudice to DOC and Consideration of Alternative Means*

"Prejudice may be shown by loss of material witnesses due to lapse of time . . . ." (*People v. Morris* (1988) 46 Cal.3d 1, 37 [249 Cal.Rptr. 119, 756 P.2d 843].) The obvious exigency here was Wood's serious illness. DOC first presented this concern in opposition to Duchrow's motion for a continuance on June 20. The court suggested a reasonable method to preserve Wood's testimony by videotape in order to accommodate a continuance. But Forrest refused to abide by the stipulation of her former attorney. Preserving Wood's testimony was then further complicated by the revelation that Forrest was a vexatious litigant who could not proceed without counsel or permission from the presiding judge. It became unclear how the deposition could proceed with Forrest unrepresented. Because any delay increased the risk that DOC could be prejudiced by the unavailability of a trial witness, the court proceeded by issuing a series of OSC's in order to be able to proceed with trial or to resolve the issue of the videotaped deposition. While granting these short continuances, the court indicated it would consider further continuances for trial preparation once counsel appeared.

The sequence of the proceedings and the court's considerations are clear from the record. During the hearing on Duchrow's motion to withdraw, the court advised Forrest that she should retain another attorney who could "either agree or not agree as to whether or not [Duchrow's] stipulation is appropriate and then I will hear it then." Forrest then asked for clarification of what was to transpire within the two weeks until the next OSC hearing and the court responded: "For you to get new counsel; with regard to whether or not you want to disclose and have Mr. Duchrow represent you and potentially for that person being appointed as your trial counsel for all purposes, okay?" The court responded to Forrest's concern about finding an attorney willing to take a case so late in the litigation as follows: "[I]f there is a necessity for continuance, I am going to have to consider that." With respect to the trial date, the court stated: "Why don't we continue the trial to the 7th, with the understanding if new counsel comes in I, obviously, am not going to make him pick up the paper and have him pick it up and go to trial that same date."

We see this as a reasonable attempt under California Rules of Court, rule 3.1332(d)(4) to craft "alternative means to address the problem that gave rise to the motion . . . for a continuance" while being mindful of the possible prejudice to DOC under rule 3.1332(d)(5).

## B. *Forrest's Showing*

Nor does the record establish that Forrest's efforts to retain substitute counsel were sufficiently diligent so that denial of further continuances constituted an abuse of discretion in these circumstances. After Duchrow was relieved on June 20 and in the face of a July 7 hearing on the OSC, Forrest attempted to contact only one lawyer who was on vacation and unable to meet with her until the day before the OSC.[13]

After the July 7 hearing and in the face of a July 22 OSC, Forrest let her efforts to find an attorney languish for nine days with no attempt to contact any lawyer until she ran into a lawyer at a legal function on Saturday, July 16. When she followed up with him on the 19th, he was sick and could not meet with her until July 25. Only then did she contact a lawyer who had been referred to her in early July, but who was on vacation. She subsequently contacted the lawyer who had referred her to Duchrow, without any explanation as to why she did not try to call him earlier.

In response to the August 4, 2005 OSC, Forrest's further efforts to retain new counsel consisted of a conversation with an attorney who declined to represent her due to his relationship with Duchrow and conversations with Patricia Barry who showed an interest in taking the case and agreed to appear at the August 4 OSC. Because Barry and Forrest had not completed their negotiations, the court granted additional time, until August 11, for them to reach an agreement.

Despite the court's urging that Forrest and Barry communicate with each other by telephone and fax while Forrest was out of town on a business trip, Forrest did not speak to Barry again until the evenings of August 9 and 10. Based on those conversations, she reported on August 11 that unresolved issues remained, and Ms. Barry did not appear.

Given the urgency posed by Wood's illness and the impending dismissal of her lawsuit, we cannot conclude that the trial court erred in finding Forrest's efforts to be inadequate. Forrest sought to attribute the lapses in her efforts to awaiting transcripts and files, but those explanations are not persuasive. Under the circumstances, Forrest did not have the luxury of wasting any time in seeking new counsel. Nor was there any evidence that she tried to retain counsel for the limited purpose of addressing the videotaping of Wood's deposition. We also note that there is no evidence that Forrest sought

---

[13] In her declaration, Forrest stated that she immediately tried to obtain a copy of the June 20 transcript and received it on July 1, 2005. The implication was that she did not attempt to find other counsel until after she had received the transcript, a delay that cannot be justified under the circumstances of this case.

permission from the presiding judge to proceed without an attorney, pursuant to section 391.7, subdivisions (a) and (b).[14]

Finally, Forrest argues that the fact that she retained counsel 14 days after the entry of dismissal indicates that only a short continuance would have been required. But because we draw all reasonable inferences in support of the court order, we find that her retention of counsel soon after the dismissal just as readily supports the implication that finding counsel was not as difficult nor her efforts as diligent as she previously represented. (See *Bravo, supra,* 99 Cal.App.4th at p. 219.)

At the fourth OSC hearing on August 11, DOC reported that Wood had spent another 12 days in the hospital in July and was no longer answering her telephone. We find no abuse of discretion or any violation of Forrest's due process right to counsel in the trial court's denial of further continuances at that point to allow Forrest to retain substitute counsel.

## V. *The Trial Court Correctly Denied Forrest's Motion for Reconsideration*

Section 1008, subdivision (a), provides, in relevant part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." (§ 1008, subd. (a).)

A motion for reconsideration may only be brought if the party moving for reconsideration can offer "new or different facts, circumstances, or law" which it could not, with reasonable diligence, have discovered and produced at the time of the prior motion. (§ 1008, subd. (a); see *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1467 [258 Cal.Rptr. 907]; *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [4 Cal.Rptr.2d 195].) A motion for reconsideration will be denied absent a strong showing of diligence. (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690 [68 Cal.Rptr.2d 228].)

### A. *Timeliness*

Contrary to DOC's argument, the motion for reconsideration was timely. A motion for reconsideration must be made within 10 days after service of

---

[14] Section 391.7, subdivisions (a) and (b) provide that the presiding judge may permit the filing of litigation by a vexatious litigant if it appears the litigation has merit and has not been filed for the purposes of harassment or delay. Such relief may be conditioned on the furnishing of security for the benefit of the defendant.

written notice of entry of an order. (§ 1008, subd. (a).) Here, the court dismissed the matter on August 12 and the clerk served the order of dismissal on the parties by mail on that date. DOC then served a written notice of entry of the order by express mail on August 23, 2005. Forrest filed her motion for reconsideration on August 29, 2005.

The 10-day period began from DOC's service of the notice of entry and not from the clerk's service of the dismissal order. Section 1019.5, subdivision (a), provides: "When a motion is granted or denied, unless the court otherwise orders, notice of the court's decision or order shall be given by the prevailing party to all other parties or their attorneys, in the manner provided in this chapter, unless notice is waived by all parties in open court and is entered in the minutes." (§ 1019.5, subd. (a).) The purpose of such notice is to start the time running on a party's ability to seek reconsideration. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 9:320.1, p. 9(I)-116.) Here, DOC was statutorily mandated to serve notice of the trial court's order; consequently, its service of notice of entry on August 23, 2005, started the running of the 10-day time period. It follows that Forrest's motion for reconsideration was timely, filed on August 29, 2005.

### B.   *New Facts or Circumstances*

Forrest contends that her hiring of substitute counsel after the trial court dismissed her case constituted "new or different facts, circumstances, or law" sufficient to support reconsideration under section 1008, subdivision (a). She bases her explanation as to why that fact was not presented earlier on her attorney's declaration that the new circumstance, namely his retention, did not exist before the entry of dismissal and so could not have been proffered before and on her declarations filed before dismissal as to her ongoing efforts to retain new counsel.

When an action is dismissed for failure to comply with a court order, we do not believe that postdismissal compliance with the order is the type of

new fact that will support reconsideration under section 1008. That is particularly so if, as here, timely compliance was of the essence. Thus, a party whose action has been dismissed for failure to comply with a discovery order cannot simply comply later and reconstitute the lawsuit. (See §§ 2025.480, subd. (g), 2025.280, subd. (a), 2023.010, subds. (d), (g); see generally *Kahn v. Kahn* (1977) 68 Cal.App.3d 372 [137 Cal.Rptr. 332].) Similarly, Forrest could not reinstate her action simply by her late compliance with the order to retain counsel.

Furthermore, even if the retention of the new attorney qualified as a new fact or circumstance under section 1008, Forrest gave the trial court no satisfactory explanation as to why that fact did not exist prior to dismissal. "[S]ection 1008 gives the court no authority when deciding whether to grant a motion to reconsider to 'reevaluate' or 'reanalyze' facts and authority already presented in the earlier motion." (*Crotty v. Trader* (1996) 50 Cal.App.4th 765, 771 [57 Cal.Rptr.2d 818]; see also *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500 [38 Cal.Rptr.2d 626].) Thus, Forrest's earlier efforts to retain new counsel prior to the dismissal could not be offered to prove her diligence for purposes of her motion for reconsideration because those facts had already been offered, considered, and found deficient.

The only matter properly before the trial court on the reconsideration motion was the bare fact of the attorney's retention. That the fact did not exist before and, therefore, could not have been presented earlier is not a sufficient explanation under section 1008. That is analogous to offering deposition testimony in support of reconsideration of a summary judgment motion and claiming it is "new" simply because the deposition had not been taken before the ruling on the original motion. Absent some justification for the untimeliness of the deposition, such a showing is clearly deficient under section 1008. (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213 [37 Cal.Rptr.3d 338].)

The trial court did not abuse its discretion in denying Forrest's motion for reconsideration based on her late hiring of new counsel.

## DISPOSITION

The order of dismissal is affirmed. Respondents are entitled to costs on appeal.

Boren, P. J., concurred.

**ASHMANN-GERST, J.,** Dissenting.—I respectfully dissent.

The majority has rewritten Code of Civil Procedure section 391.7[1] to say what it believes the statute should say. But, "[i]n the construction of a statute . . . , [our role] is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (§ 1858.) Only the Legislature can rewrite a statute. All we can do is faithfully apply the rules of statutory construction.

According to those rules, " 'we must ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) If the language of a statute is unambiguous, the plain meaning governs and it is unnecessary to resort to extrinsic sources to determine the legislative intent. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) If the statutory language does not yield a plain meaning, we may consider extrinsic evidence of intent. (*Mejia v. Reed, supra,* at p. 663.) In other words, when the statutory language is ambiguous and susceptible to more than one reasonable interpretation, "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

Our work begins with testing the clarity of the statutory language. Section 391.7, subdivision (c), provides, in relevant part: "The clerk may not file any litigation presented by a vexatious litigant subject to a prefiling order unless the vexatious litigant first obtains an order from the presiding judge permitting the filing. If the clerk mistakenly files the litigation without the order, any party may file with the clerk and serve on the plaintiff and other parties a notice stating that the plaintiff is a vexatious litigant subject to a prefiling order as set forth in subdivision (a). The filing of the notice shall automatically stay the litigation. The litigation shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the presiding judge permitting the filing of the litigation as set forth in subdivision (b). If the presiding judge issues an order permitting the filing, the stay of the litigation shall remain in effect, and the defendants need not plead, until 10 days after the defendants are served with a copy of the order." (§ 391.7, subd. (c).)

The applicability of section 391.7 to this case is anything but clear. The statute refers to the "fil[ing]" of "litigation." The term "file" is not defined in the vexatious litigant statutory scheme. "File" has been defined as "[t]o deposit in the custody or among the records of a court. To deliver an instrument or other paper to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place." (Black's Law Dict. (6th ed. 1990) p. 628, col. 1.) "Filing with court" is defined as "[d]elivery of legal document to clerk of court or other proper officer with intent that it be filed with court." (Black's Law Dict., *supra*, p. 628, col. 2.) "Litigation" is defined in section 391, subdivision (a), as "any civil action or proceeding, commenced, maintained or pending in any state or federal court." Simply put, the narrow definition of filing is incongruous with the broad definition of litigation; i.e., "litigation" encompasses much more than things that are filed. But the Legislature referred to the filing of "litigation," a word it defined broadly in section 391. This creates an ambiguity as to whether the Legislature intended a prefiling order to curb just the filing of a new case, or also the continuing litigation of a case.

I note that the vexatious litigant statutes do not appear to have anticipated the situation presented in the instant case, namely when a vexatious litigant subject to a prefiling order is initially represented by counsel and then loses legal representation. Nothing in the statutes indicates that the subsequent retention of counsel cures the defect of appearing in propria persona, which is what the parties, the trial court, and the majority assume. And, nothing in section 391.7 expressly prohibits a vexatious litigant from proceeding in propria persona after his or her complaint has been filed by an attorney then representing the plaintiff.[2] This silence, when considered with the uncertain

---

[2] The legislative history does not expressly address whether section 391.7 was intended to apply to a plaintiff who is subject to a prefiling order and loses her legal representation at some point during the litigation. However, some of the legislative history indicates that a prefiling order prohibits a vexatious litigant from filing, in propria persona, "any further suits." (*Review of Selected 1990 California Legislation* (1990) 22 Pacific L.J. 323, 451.) Similarly, financial reports filed in support of the legislation suggest that prefiling orders restrict "the filing of vexatious lawsuits" (Cal. Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 2675 (1989–1990 Reg. Sess.) Aug. 20, 1990) and "reduce the number of unnecessary, frivolous lawsuits filed against the State." (Cal. Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 2675 (1989–1990 Reg. Sess.) Aug. 21, 1990.) One of the specific findings set forth in the bill report was that the statute would "make it more difficult to file frivolous suits and actions." (Cal. Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 2675, *supra*, Aug. 21, 1990.)

application of the definitions of the key terms in section 391.7, bolsters my conclusion that the statute is, at best, ambiguous. This is where the courts come in. Our job is to resolve this ambiguity in a just and wise manner.

For answers, I turn to public policy.

There are a number of policies implicated, and we must assess their interplay. First, there is the policy behind the vexatious litigant statutes. "Vexatious litigant statutes were created 'to curb misuse of the court system by those acting in propria person[a] who repeatedly relitigate the same issues.' [Citation.]" (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220–221 [120 Cal.Rptr.2d 879].) "The Legislature first enacted sections 391.1 through 391.6 in 1963, as a means of moderating a vexatious litigant's tendency to engage in meritless litigation. [Citations.] Under these sections, a defendant may stay pending litigation by moving to require a vexatious litigant to furnish security if the court determines 'there is not a reasonable probability' the plaintiff will prevail. Failure to produce the ordered security results in dismissal of the litigation in favor of the defendant. [Citations.]" (*Bravo v. Ismaj, supra*, at p. 221.)

The second public policy is a corollary to the first, and it establishes that one of the best ways to control abusive litigation is with gatekeeping. "In 1990, the Legislature enacted section 391.7 to provide the courts with an additional means to counter misuse of the system by vexatious litigants. Section 391.7 'operates beyond the pending case' and authorizes a court to enter a 'prefiling order' that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge. [Citation.] The presiding judge may also condition the filing of the litigation upon furnishing security as provided in section 391.3. [Citation.]" (*Bravo v. Ismaj, supra*, 99 Cal.App.4th at p. 221.)

Third, there is a well-established public policy in favor of trials on the merits. (§ 583.130.)

Taken together, these policies compel me to conclude that Forrest's action should not have been dismissed pursuant to section 391.7.[3] Forrest's first

---

[3] To the extent the majority contends that pursuant to section 391.7, subdivision (c), the trial court had the discretion to dismiss Forrest's action after granting her several continuances to obtain new counsel, this analysis is flawed. Even if section 391.7, subdivision (c), governed, which I do not believe it does, then dismissal of Forrest's action should have been automatic. (See § 391.7, subd. (c) ["The litigation shall be automatically dismissed"].) The statute does not use the word "may" and is not permissive, as the majority posits. (Maj. opn., *ante*, at p. 199, fn. 12.) Rather, it deliberately uses the words "shall" and "automatic[]," establishing the statute's firm mandate. (See, e.g., *People v. Standish* (2006) 38 Cal.4th 858, 869 [43 Cal.Rptr.3d 785, 135 P.3d 32].) It follows that, if section 391.7, subdivision (c), applies beyond

amended complaint, the operative pleading, was filed by Forrest through her counsel, a "neutral assessor[]" of her claims. (*In re Shieh* (1993) 17 Cal.App.4th 1154, 1167 [21 Cal.Rptr.2d 886].) That pleading was proven to have merit. It largely withstood respondents' demurrer and motion to strike. Her claims partially survived respondents' motion for summary adjudication. A jury had even been impaneled and trial had commenced on her causes of action. Permitting this litigation to proceed would not have transgressed either the first or second policies because the litigation was not meritless, and the gatekeeping function was not implicated by the operative pleading because it was filed by a lawyer. Finally, dismissal contravenes the policy of trial on the merits. That is all the more true here. Through no fault of Forrest, a mistrial was declared.[4] Based upon these circumstances, dismissal was unjust.[5]

I conclude that a prefiling order governs only the initiation of a lawsuit, not what occurs during the prosecution of the litigation. (See, e.g., *Bravo v. Ismaj, supra*, 99 Cal.App.4th at pp. 221–222 [§ 391.7 "operates solely to preclude the initiation of meritless lawsuits"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 1:914, p. 1-192.6 (rev. #1, 2000) ["Plaintiffs who litigate in propria persona and repeatedly file frivolous pleadings or motions, or attempt to relitigate issues previously determined against them, may be barred from filing new lawsuits without prior leave of court"].) This interpretation does not leave trial courts without a tool to prevent litigation from getting out of hand. Aside from the protections of other sections contained in the Code of Civil Procedure, such as section 128.7, if a plaintiff loses her counsel midstream, the defendants can

---

the initial filing of a lawsuit, the trial court would have had no discretion to grant Forrest a continuance. She would have had 10 days to obtain the presiding judge's permission to proceed with her litigation once the respondents gave her notice that she was subject to a prefiling order. In the absence of permission, her action would have been automatically dismissed.

[4] The majority asserts that the trial judge "became unavailable to complete the case." (Maj. opn., *ante*, at p. 190.) There is no evidence that the trial judge could not have completed the trial prior to his transition to the Court of Appeal or otherwise have obtained permission to finish a trial that had already commenced.

[5] Neither did the trial court have the inherent authority to dismiss Forrest's first amended complaint, as suggested by the majority. Aside from the fact that this issue was not briefed by the parties, because litigants may represent themselves, the trial court lacked the inherent authority to order Forrest to retain counsel and then, on its own motion, dismiss Forrest's action for failure to retain counsel if she was not required to be represented by counsel after her attorney withdrew.

move for security pursuant to sections 391.1 and 391.3.[6] This remedy alleviates the majority's concern of a vexatious litigant engaging in harassing behavior during the prosecution of an action, while also protecting a plaintiff with a valid claim.

---

[6] In fact, Forrest did offer to post security.