Filed 8/27/20  Certified for Full Publication 9/4/20 (order attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| RICHARD MARSHALL et al., | C088240 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCSCCVCVP017-001240) |
| v. | |
| DANIEL WEBSTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Siskiyou County, Laura J. Masunaga, Judge.  Dismissed in part and affirmed in part.

Pacific Legal Group and Douglas A. Applegate for Plaintiffs and Appellants.

Paul Nicholas Boylan for Defendant and Respondent.

Plaintiffs Richard and Susan Marshall sued for defamation and intentional infliction of emotional distress, alleging that defendant Daniel Webster made maliciously false and defamatory statements about them in an electronic book and on social media.

1

On May 11, 2018, the trial court granted defendant's special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[1] California's anti-SLAPP statute.[2] The court's order provided that defendant was entitled to attorney fees under the statute and, on August 29, 2018, it awarded him $79,000 in fees.

On appeal, plaintiffs challenge the dismissal of their complaint and the award of attorney fees. In the published portion of this opinion, we conclude that the trial court's May 11 order granting defendant's special motion to strike the complaint was a final determination of the rights of the parties, thus constituting a judgment from which plaintiffs failed timely to perfect an appeal. With respect to the attorney fees order, we find no abuse of discretion and affirm.

BACKGROUND

On October 30, 2017, plaintiffs filed a verified complaint for damages alleging two causes of action, defamation and intentional infliction of emotional distress. They alleged that defendant, a reporter and author, maliciously and with reckless disregard for the truth, published false statements about them, their political activities, and about a lawsuit they filed against the town in which they live. These statements, which appeared on Facebook, and in an electronic book available on Amazon's Kindle service and on eBay, were alleged to have caused them severe emotional distress and damaged their reputations in the community.

On January 16, 2018, defendant filed a special motion "to strike the complaint . . . in its entirety, with prejudice and without leave to amend pursuant to" section 425.16. The motion was argued on March 1, 2018, and taken under submission by the trial court.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     SLAPP is an acronym for " 'strategic lawsuits against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1.)

2

On May 11, 2018, the court granted defendant's motion in a signed, filed-endorsed "Ruling Re Defendant's Special Motion Anti-SLAPP." The five-page, single-spaced order thoroughly discussed the relevant factual and legal issues before ruling that "[d]efendant's special motion to strike the verified complaint pursuant to Code of Civil Procedure § 425.16 is granted." It further provided that "[d]efendant may file a noticed motion regarding his requested attorney fees and costs." The order included a certification of mailing to the parties dated and signed on May 11, 2018, by E. Fisher, deputy clerk of the court.

The trial court made two entries on its register of actions in connection with the May 11 ruling. The first reads: "DECISION . . . 5/11/2018 [¶] *Notes*: Decision by [trial judge] as follows: Defendant's special motion to strike the verified complaint pursuant to Code of Civil Procedure § 425.16 is granted; copies mailed on 5/11/18. (EFF)" The other provides: "DISMISS LACK OF PROS . . . 05/11/2018 [¶] *Notes*: DISMISSED - Unprosecuted or on Court's Motion: After Special Motion to Strike Granted (EFF)."

On June 15, 2018, defendant filed his motion for attorney fees.

On June 29, 2018, a one-page proposed order submitted by defendant's attorney "Granting Special Motion of Daniel Webster to Strike Plaintiffs' Verified Complaint" was signed by the court and filed, but apparently was not served on plaintiffs.

On July 30, 2018, defendant served a "Notice of Entry of Judgment or Order" form, attaching the June 29, 2018 order.

On August 9, 2018, plaintiffs moved for reconsideration of the trial court's ruling on defendant's anti-SLAPP motion "on the grounds that the May 11, 2018 order contains significant improper assumptions, factual mistakes, and error [*sic*] of law."

On August 29, 2018, the trial court ruled on defendant's fee motion. As discussed in greater detail below, the court granted the motion, but reduced defendant's fee award to $79,000 from a requested $121,815.

3

On October 25, 2018, plaintiffs noticed their appeal of three orders: the "5/11/2018 Ruling Re Defendant's Special Motion Anti-SLAPP[;] 6/29/2018 Order Granting Special Motion of Daniel Webster to Strike Plaintiff[s'] Verified Complaint[; and the] 8/29/2018 Ruling Re Attorney Fees and Motion to Tax Costs."

The trial court issued an order denying plaintiffs' motion for reconsideration on November 15, 2018.

DISCUSSION

I

*Plaintiffs' Appeal of the Order Granting Defendant's*

*Special Motion to Strike is Untimely*

Defendant argues that plaintiffs' appeal from the order granting his anti-SLAPP motion must be dismissed as untimely. Plaintiffs contest this, arguing that the clerk's service of the May 11 ruling did not trigger the deadline for appeal and that the filing of their motion for reconsideration on August 9 was timely and extended the appeal deadline. We agree with defendant.

A.     *Applicable law*

"If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Cal. Rules of Court, rule 8.104(b).[3]  "The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal. [Citation.]" (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.) Thus, " 'an aggrieved party must file a timely

---

[3]     Undesignated rule references are to the California Rules of Court.

"Rules of Court have the force of law and are as binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law. [Citation.]" (*R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 205.)

appeal or forever lose the opportunity to obtain appellate review.' " (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46, italics omitted.)

Rule 8.104 provides the relevant deadlines: unless a statute or court rule provides otherwise, a notice of appeal must be filed on or before the *earlier* of 60 days after service by the superior court clerk of a filed-endorsed copy of the judgment, or 60 days after notice of entry of the judgment is served by a party. (Rule 8.104(a)(1)(A)-(B).)[4] For purposes of this rule, " 'judgment' includes an appealable order." (Rule 8.104(e).)

B.      *Plaintiffs' notice of appeal was not timely filed under rule 8.104*

As plaintiffs concede, an order granting a special motion to strike under the anti-SLAPP statute is an appealable order. (§§ 425.16, subd. (i) ["An order granting or denying a special motion to strike shall be appealable under Section 904.1"]; 904.1, subd. (a)(13) ["An appeal . . . may be taken from . . . an order granting or denying a special motion to strike under Section 425.16"]; *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1247 ["[t]he order granting the anti-SLAPP motion . . . was final when made, and thus appealable"].) Hence, the deadline to appeal an order granting a special motion to strike is 60 days after service by the clerk of a filed-endorsed copy of the order granting the anti-SLAPP motion, or 60 days after notice of entry of that order is served by a party, whichever is earlier. (Rule 8.104(a)(1), (e).)

---

[4]      Rule 8.104(a)(1) provides in full: "Unless a statute or rules 8.108, 8.702, or 8.712 provides otherwise, a notice of appeal must be filed on or before the earliest of: [¶] (1) [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment."

The order granting defendant's anti-SLAPP motion was filed on May 11, 2018, and the clerk served a signed, filed-endorsed copy of the ruling the same day.**5** Accordingly, under rule 8.104(a)(1)(A), the notice of appeal from that order had to be filed within 60 days of May 11, or no later than July 10, 2018. (See *Maughan v. Google Technology, Inc., supra*, 143 Cal.App.4th at p. 1247.)

Plaintiffs disagree with this analysis. Citing *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, they argue that the clerk's service of a "memorandum of decision" on May 11 did not trigger rule 8.104(a)(1)'s appeal deadline because it was followed by a "formal order" signed by the trial court on June 29, 2018. The record, however, does not support this contention. Although "[t]he general rule is that a statement or memorandum of decision is not appealable," a reviewing court has discretion to treat a statement of decision as an appealable order when it "is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Alan, supra*, at p. 901.) Here, the ruling on defendant's special motion to strike the complaint was signed, filed and served by the trial court on May 11. It set forth in detail the factual and legal basis for the court's decision to grant the anti-SLAPP motion and invited a motion for attorney fees. Given its wording, the ruling clearly constituted the trial court's final decision on the merits of defendant's motion. It is unclear why defendant submitted the one-page proposed order to the trial court for signature in late June, but there is no indication that it was intended to supplant the signed, filed-endorsed May 11 ruling or otherwise constituted a more "formal" final order on defendant's special motion to strike the complaint.

---

**5** Because the clerk's May 11 service occurred before defendant's July 30 service of the "Notice of Entry of Judgment or Order" form, we use the earlier date to calculate timeliness. (Rule 8.104(a)(1).)

6

Because plaintiffs did not file their notice of appeal until October 25, 2018, unless the July 10 appeal deadline was extended under rule 8.108(e) by the filing of plaintiffs' reconsideration motion, we must conclude that the filing was untimely and that we lack jurisdiction to consider the appeal of the May 11 anti-SLAPP order.

C.  *The filing of plaintiffs' motion for reconsideration did not extend the time in which to notice an appeal*

Defendant argues that plaintiffs' motion for reconsideration did not extend the time to appeal because it was filed more than 10 days after the clerk served written notice of entry of the May 11 order striking the complaint.  (See § 1008, subds. (a), (e).)  He also argues that the May 11 order (and the trial court's sua sponte dismissal of the action) was a final judgment that divested the court of jurisdiction to reconsider the ruling in the first instance.

Plaintiffs argue in reply that the timeliness of their appeal must be assessed under rule 8.108(e), not rule 8.104, because the clerk's filing and service of the May 11 ruling did not trigger the 10-day deadline for seeking reconsideration; rather, it was *defendant's* service of the July 30, 2018 notice of entry of the June 29 order that started the clock. They further contend that the trial court had jurisdiction to reconsider the May 11 ruling because the order lacked formal dismissal language.  Finally, they invoke principles of "quasi estoppel" to save their appeal.

We find no merit to plaintiffs' contentions and instead agree with defendant that the notice of appeal was untimely because the May 11 order granting his anti-SLAPP motion and striking the complaint was an appealable judgment, and that upon its entry and service by the clerk, the trial court lost jurisdiction to entertain or decide a motion for reconsideration.  Filing of that motion thus could not extend the deadline for appeal.  We explain below.

It is settled law that a motion for reconsideration is ineffectual if it is filed after entry of judgment.  This is a corollary to the rule that section 1008 applies only to

7

applications for *interim* orders. (§ 1008, subd. (h); see *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 937-938 ["Section 1008 is directed to interim rulings. . . . Thus, a motion for reconsideration may only be considered before final judgment is entered and while the case is still pending in the trial court"]; see also *Branner v. Regents of University of California* (2009) 175 Cal.App.4th 1043, 1048 ["A motion to reconsider is not valid if it is filed after the final judgment is signed"]; *APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 181 (*APRI*) ["Once the trial court has entered judgment, it is without power to grant reconsideration"].)

The rule is equally established that "if the trial court has no power to rule on a reconsideration motion after judgment, such a motion can have no effect on the period within which to file a notice of appeal." (*Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1238; see also rule 8.108(e) [only a "valid motion to reconsider" extends the time to appeal].)

Plaintiffs do not respond directly to defendant's argument that the May 11 order granting defendant's special motion to strike was a judgment that divested the trial court of jurisdiction to entertain a motion for reconsideration. They instead focus on a related point, i.e., that the trial court purportedly had jurisdiction to reconsider the anti-SLAPP ruling because the May 11 order was not an order of dismissal. Although plaintiffs refer to the May 11 ruling as an "order dismissing plaintiffs' case" in their opening brief, on reply they pivot to argue that under section 581d,[6] an order of dismissal must be a formal written document signed by the court and filed in the action. "Until that happens," they

---

**6** Section 581d provides: "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered. [¶] All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case."

8

aver, "the case is *not* dismissed and the court retains jurisdiction to reconsider its rulings." (Original italics.) In making this argument, plaintiffs seek to elevate form over substance. We conclude that the May 11 order striking the complaint, coupled with the docket entry dismissing the action, was a judgment that satisfied section 581d and precluded reconsideration.

"In determining whether there has been a final judgment, sometimes a difficult question, [appellate courts] have long adhered to the rule 'that the question, as affecting the right of appeal, is not what the form of the order or judgment may be, but what is its legal effect. [Citations.]' [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 698-699.) Our Supreme Court has ruled that "granting a motion to strike under section 425.16 results in the dismissal of a cause of action on the merits." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 193.) And contrary to plaintiffs' assertion, where, as here, a trial court grants a special motion to strike the complaint *in its entirety*, the "order granting [the] anti-SLAPP motion [is] a written order of dismissal of the entire action, and therefore [is] a judgment pursuant to section 581d." (*Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 994 (*Melbostad*).)

*Melbostad* is instructive. In that case, the plaintiff had not appealed from either of two orders granting the defendants' anti-SLAPP motions. Although the first order included dismissal language, as well as an express grant of the motion, the later one, issued after the trial judge granted a motion for reconsideration,[7] stated only that the " 'defendants' special motion to strike should be granted' and did not specifically dismiss

---

[7]    The *Melbostad* court observed that the reconsideration motion in that case—filed *after* entry of the first anti-SLAPP order—was invalid. "After entry of judgment, a trial court has no further power to rule on a motion for reconsideration. [Citation.] Because the trial court's original order striking appellant's complaint was a judgment, the court did not have authority to reconsider it. [Citation.]" (*Melbostad, supra*, 165 Cal.App.4th at p. 994, fn. 8.)

9

the complaint." (*Melbostad, supra*, 165 Cal.App.4th at p. 994.) In finding the order granting defendants' anti-SLAPP motion to be an order of dismissal under section 581d, it was immaterial that the second order lacked express dismissal language, since it was "clear from the record that this was the effect of the court's order." (*Id.* at p. 995.) The *Melbostad* court found "further support for [its] conclusion that the trial court's order granting the defendants' anti-SLAPP motion was a judgment in section 577, which provides that a final judgment is 'the final determination of the rights of the parties in an action or proceeding.' '[A] judgment, no matter how designated, is the final determination of the rights of the parties in an action. Thus, an "order" which is the final determination in the action is the judgment.' " (*Melbostad*, at p. 995; see also *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 [it is not the form of the decree but its substance and effect that determines whether an adjudication is final and appealable].)

Here, the relief sought in defendant's anti-SLAPP motion was plain: "to strike the complaint . . . in its entirety, with prejudice and without leave to amend pursuant to . . . section 425.16." The trial court granted this relief, ruling unequivocally in a signed, filed-endorsed order served on the parties that "[d]efendant's special motion to strike the verified complaint pursuant to Code of Civil Procedure § 425.16 is granted." As explained *ante*, an order granting a special motion to strike is an appealable order and is expressly deemed a judgment for purposes of the rule governing appeal deadlines. (Rule 8.104(e).) And were there any doubt about the effect of the May 11 order, the trial court entered a dismissal in the docket the same day as its ruling. Although plaintiffs discount the effect of the dismissal entered by the trial court in the register of actions, deeming the content "unintelligible notes,"[8] the Court of Appeal, in a case cited by plaintiffs, found

---

[8]    In their opening brief, before the issue of timeliness was raised, plaintiffs appear to grasp the import of this docket entry, noting that "[a]fter dismissing plaintiffs' complaint

10

that a similar docket entry satisfied section 581d.  (See *APRI, supra*, 76 Cal.App.4th at p. 181 ["Plaintiff contends that no judgment was entered in the register of actions and hence there was no judgment within the meaning of section 581d.  [Defendant] has submitted a supplemental appendix, which includes the 'Civil Register Report' for this case.  It reflects entry of the order [as the date the motion to quash service was granted].  This satisfies the requirement of section 581d"].)

In substance and effect, the May 11 order granting defendant's special motion to strike finally disposed of all causes of action against defendant, dismissed the complaint with prejudice, and invited him to file a motion for attorney fees.  On this record, there was no need for a separate order of dismissal or judgment.  Here, as in *Melbostad*, "the order granting defendants' motion to strike was the final determination of the rights of the parties in this action.  [Citations.]  There was no issue left for future determination, and the order disposed of the entire case . . . ."  (*Melbostad, supra*, 165 Cal.App.4th at p. 996.)  As such, the May 11 order striking the complaint was a judgment from which no valid motion for reconsideration could lie and the time to appeal was not extended, even if the motion was timely filed under section 1008, subdivision (a), an issue on which we express no opinion.[9]  (*Ramon v. Aerospace Corp., supra*, 50 Cal.App.4th at pp. 1237-1238; *APRI, supra*, 76 Cal.App.4th at p. 182 ["The issue is jurisdictional.  Once the trial court has entered judgment, it is without power to grant reconsideration"].)

---

as a SLAPP, the court dismissed the demurrers and motions to strike [defendant's] affirmative defenses on its own motion recited solely in the docket."

[9]    Given our conclusion, we find *Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183 (disapproved on another ground in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172, fn. 3), which held that the 10-day period under section 1008, subdivision (a) begins to run, not upon service by the clerk, but upon service given pursuant to section 1019.5, subdivision (a) by the party prevailing on the motion (*Forrest, supra*, at pp. 202-203), inapplicable to the facts of this case.

Plaintiffs' failure to timely file their notice of appeal by July 10, 2018, divests this court of jurisdiction to consider the merits of the trial court's ruling on the anti-SLAPP motion and we therefore must dismiss the appeal. In light of this conclusion, we do not reach plaintiffs' other arguments.**10**

II

*The Trial Court Did Not Abuse its Discretion in Awarding Attorney Fees*

Plaintiffs contend the trial court abused its discretion in awarding attorney fees to defendant by departing from the basic fee for comparable legal services in the local Siskiyou County community and instead approving a market rate for attorneys in the San Francisco area. Defendant argues the record amply supports the trial court's decision to reimburse defendant's attorneys at their usual hourly rates. We agree with defendant and will affirm the order.**11**

An award of attorney fees to a prevailing defendant on an anti-SLAPP motion is mandatory. (§ 425.16, subd. (c)(1); *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 544.) We review the trial court's determination of the amount of the

---

**10** We decline plaintiffs' invitation to use estoppel principles to revive their appeal. Jurisdiction cannot be conferred upon appellate courts on an estoppel theory. (*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 835; *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 674 [when notice of appeal has not been timely filed, the appellate court "lacks all power to consider the appeal on its merits and must dismiss, on its own motion if necessary, without regard to considerations of estoppel or excuse"].)

**11** Plaintiffs' challenge to the trial court's August 29, 2018 order granting defendant's motion for attorney fees is a timely appeal from a postjudgment order. (§ 904.1, subd. (a)(2); *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251 ["Although denominated an 'order,' the granting of an order dismissing a case on the basis of the anti-SLAPP statute has the same effect as a final judgment. When the trial court issues an appealable order akin to a final judgment, a party may appeal from a subsequent order granting or denying a request for an award of attorney fees and costs as an 'order made after a judgment'—or, here, more aptly described as an order after an appealable order"].)

12

award for abuse of discretion and will not set aside the award " 'absent a showing that it is manifestly excessive in the circumstances.' " (*Mallard, supra*, at p. 544.) In this regard, we are mindful that "[t]he ' "experienced trial judge is the best judge of the value of professional services rendered in [her] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) "An abuse of discretion is shown when the award shocks the conscience or is not supported by the evidence. [Citations.]" (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 549-550.)

The amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the "lodestar" method. (*Ketchum, supra*, 24 Cal.4th at pp. 1135-1136.) Under that method, the court "tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321.) The lodestar calculation begins with a determination of the "reasonable hourly rate," i.e., the rate "prevailing in the community for similar work." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The general rule is "[t]he relevant 'community' is that where the court is located." (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 71.)

However, "in the unusual circumstance that local counsel is unavailable," or that "hiring local counsel was impracticable," the trial court is not limited to the use of local rates and may instead use the hourly rate of out-of-town counsel from a higher fee market in calculating the lodestar amount. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 399.) In *Horsford*, the Court of Appeal held the trial court abused its discretion in using local Fresno rates in calculating the lodestar amount where the plaintiff submitted an uncontradicted declaration stating he unsuccessfully attempted to retain local employment law attorneys to represent him

before hiring out-of-town counsel from San Francisco.  The court explained:  "This evidence was overwhelming and uncontradicted; it simply provides no basis for the court's conclusion that 'there is no adequate showing that it was impossible or even unusually difficult to find a local attorney to take the case.'  While we doubt a plaintiff needs to make anything more than 'a good faith effort to find local counsel' [citation] in order to justify the fees of out-of-town counsel, the evidence in the present case satisfies even the higher standard adopted by the trial court."  (*Id.* at pp. 398-399.)

Similarly, in *Center For Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, the Court of Appeal held the trial court abused its discretion in using local San Bernardino rates in calculating the lodestar amount where "the only evidence on the issue of availability of local counsel showed plaintiffs' need to retain out-of-town counsel." (*Id.* at p. 619.)  That evidence was a declaration from one of the plaintiffs in the action.  The declarant stated he was both " 'actively involved in environmental and conservation issues in the San Bernardino Mountains' " and " 'familiar with the local San Bernardino attorney market,' " and to his knowledge " 'there [were] no local attorneys in San Bernardino County that regularly practice environmental law on behalf of environmental groups, will do such work on a contingent or reduced rate basis, and possess sufficient expertise . . . to represent . . . the . . . petitioners in this litigation.' " (*Id.* at p. 618.)  The court explained:  "A plaintiff's threshold showing of impracticability . . . is not onerous [citation], and the [above-described] declaration is sufficient and competent evidence that plaintiffs acted in good faith and hiring qualified counsel in the San Bernardino area was impracticable." (*Ibid.*; see also *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 249-250 [affirming trial court's use of out-of-town rates where one of the plaintiffs sought local counsel, who refused to undertake primary representation and stated in a declaration he knew of no other local counsel who would have done so].)

14

Here, defendant documented his efforts to secure local representation in the declaration he submitted in support of his fee motion. He stated that he contacted a local attorney who told him his rate of $350 per hour was typical for the area, but declined to take the case and could not recommend anyone nearby to represent him on the matter, especially since defendant lacked money to pay a lawyer and required representation on a contingency basis. Plaintiffs introduced no evidence that local counsel were willing to accept this matter on a contingency fee basis. (Cf. *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1241 [upholding fee award at lower local rates where school district submitted declarations from two local attorneys who "declared that they had the experience, skill and resources to accept such a case and would have taken this case if asked"].)

After reviewing the evidence, the trial court implicitly found that defendant had made the requisite "good faith effort" to secure local counsel, but that the local bar lacked the resources to handle the litigation on a contingency fee basis. The court said, "Defendant has submitted sufficient proof that he was unable to hire local counsel, as he is indigent, did not have a retainer, and was required to seek counsel from out of the area who would be willing to take his case on a contingent recovery."

With respect to the hourly rates, the trial court, citing *Horsford, supra*, further found "there has been a sufficient threshold showing in this case that compelled defendant to seek an out-of-county attorney. Defendant contacted Janine Ogando, an experienced civil litigator who was familiar with the plaintiffs and, while willing to work with counsel, was not willing to be the attorney of record. Janine Ogando in [turn] was able to secure her professional colleague, Kathleen Clark, to appear as attorney of record, with Ogando to do much of the legal work. Both Ogando and Clark are experienced civil

15

litigators and their hourly fees at [a] rate of $450 and $500 are reasonable given their expertise and experience."[12]

Absent an arbitrary ruling, case law gives trial judges great discretion in using their knowledge and experience to assess " ' "the value of professional services rendered in his [or her] court," ' " even without the necessity of expert testimony.  (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095.)  Indeed, under *Ketchum*, the trial court could have enhanced the hourly rate in recognition of the contingent nature of the representation.  (See *Ketchum, supra*, 24 Cal.4th at p. 1132 ["The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis"].)  On this record, plaintiffs have failed to carry their burden to show the trial court's award of attorney fees constituted an abuse of discretion.  We therefore affirm the trial court's order.

---

[12]    Although plaintiffs did not (and do not) identify any work they considered duplicative, unreasonable, or unnecessary, contrary to their assertion, the trial court did conduct its own review of the billing records to determine a reasonable fee and ultimately reduced the award from a requested amount of $121,815 down to $79,000 due to (1) duplicative or inefficient billing by Ogando and Clark, (2) excessive time spent on certain tasks, and (3) billing for unrecoverable travel time.

DISPOSITION

The appeal from the May 11 and June 29 orders granting the special motion to strike is dismissed.  The order granting attorney fees is affirmed.  Defendant is awarded his costs on appeal.  (Rule 8.278(a)(1), (2).)


                                                        KRAUSE            , J.



We concur:



        ROBIE            , Acting P. J.



        BUTZ            , J.*

_____

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| RICHARD MARSHALL et al.,<br><br>       Plaintiffs and Appellants,<br><br>  v.<br><br>DANIEL WEBSTER,<br><br>       Defendant and Respondent. | C088240<br><br>(Super. Ct. No. SCSCCVCVP017-001240)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION IN FULL<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed August 27, 2020, was certified for partial publication in the Official Reports. For good cause it now appears that the opinion should be published in full in the Official Reports and it is so ordered. There is no change in the judgment.

FOR THE COURT:



      ROBIE      , Acting P. J.



      KRAUSE      , J.



      BUTZ      , J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2